FILED
SUPERIOR COURT
OF GUAM

2022 AUG -1 PM 5:28

CLERK OF COURT
BY:_____

**IN THE SUPERIOR COURT OF GUAM**

| | |
|---|---|
| IN THE MATTER OF THE ESTATE<br><br>OF<br><br>JOAQUIN C. LEON GUERRERO,<br><br>Decedent. | Superior Court Case No. **PR0149-19**<br><br>**DECISION AND ORDER RE MOTIONS FOR SUMMARY JUDGMENT** |

In this contested probate matter, the Court considers whether summary judgment is proper concerning the validity of the marriage between Decedent Joaquin C. Leon Guerrero and Elizabeth Raposa Leon Guerrero. Upon review of the undisputed facts, the record, and the parties' arguments, the Court determines that Joaquin's divorce from Nancy Toves was not final when he married Elizabeth. The Court further determines that Guam law does not recognize Elizabeth as Joaquin's legal spouse. Therefore, Elizabeth lacks the priority to nominate an administrator for Joaquin's estate and this matter shall proceed to trial on the petition filed by Joaquin's son and appointed executor, Franklin P. Leon Guerrero. In so finding, the Court GRANTS the motion for summary judgment filed by Joaquin's son Patrick Leon Guerrero and DENIES Elizabeth's motion for partial summary judgment.

## I.    PROCEDURAL BACKGROUND

Franklin petitioned the Court to admit the will of his father, Joaquin. Pet. Admit Will (Sep. 3, 2019) ("Franklin's Petition"). He furnished a will that Joaquin purportedly executed in September 2003. The 2003 will states that Joaquin is married to Nancy Toves Leon Guerrero. It devises different assets among Nancy, Joaquin's eight living children, other persons, and the



ORIGINAL

Joaquin C. Leon Guerrero Memorial Trust. He also appoints Franklin and his daughter Carlotta A. Leon Guerrero as joint co-executors.[1] The 2003 will has one witness and is notarized.[2]

At the October 10, 2019 hearing on Franklin's petition, the Court stated it would grant the petition contingent on his filing of certain declarations of service. By the next hearing on January 9, 2020, the Court had not finalized the appointment of Franklin. Also, Elizabeth appeared, claimed to be Joaquin's spouse, and indicated she would contest the 2003 will.

Elizabeth then nominated Albert I. Tudela to petition the Court to admit a will purportedly executed by Joaquin on January 25, 2008. Pet. Letters Admin. (Jan. 28, 2021) ("Albert's Petition"). The 2008 will indicates that Joaquin is divorced. The will devises assets among Joaquin's children and does not mention the other beneficiaries listed in the 2003 Will, such as the trust. It also appoints Franklin as the sole executor and has three attesting witnesses. Albert's Petition seeks to disqualify Franklin from serving as Executor because Franklin failed to inform the Court of the newer will and Joaquin's new spouse and for other reasons of improvidence and want of understanding or integrity.

The Court set the competing petitions for trial; however, the trial was vacated due to the Court's calendar. The matter was also reassigned to the undersigned Judge.

Citing the procedure for contested will proceedings, 15 GCA § 1603, the Court issued a Citation to all persons mentioned under both wills. After issuing a Scheduling Order which allowed for discovery and dispositive motions, Patrick and Elizabeth filed separate motions for

---

[1] When it comes to assets held in the trust, the 2003 Will specifies that Franklin cannot make decisions alone. If Carlotta refuses her appointment, all children must vote on a successor co-executor. Franklin's Petition, Ex. 2 at p. 2.

[2] The presence of just one witness calls into question this will's validity. *See* 15 GCA § 201 (a will must have two attesting witnesses).

ORIGINAL

summary judgment.[3]  Both motions concern the validity of Joaquin and Elizabeth's marriage. The court now addresses those motions.

## II.    UNDISPUTED FACTS

The following facts appear undisputed based on the Court's record:

1.  On February 7, 2008, the Superior Court of Guam granted an interlocutory divorce decree between Joaquin and Nancy.  DM0476-05 (Interlocutory Decree Divorce (Feb. 7, 2008)).  The Interlocutory Decree references a hearing held on January 16, 2008, where the Court made certain findings relative to the dissolution.  The decree then states, "That the marriage of Plaintiff and Defendant is dissolved nunc pro tunc as of January 16, 2008, pending the entry of the final judgment."  *Id.*  The court also noted the need to address issues surrounding community property and community debts.  *Id.*

2.  On March 25, 2008, Joaquin signed an affidavit at the U.S. Embassy in the Philippines declaring that his two previous marriages had been legally terminated.  Mot. Partial Summ. J., Ex. 1 (Mar. 3, 2022).

3.  On April 10, 2008, Joaquin and Elizabeth obtained a Certificate of Marriage from the Republic of the Philippines.  Mot. Partial Summ. J., Ex. 2.

4.  On July 2, 2009, the Superior Court issued Findings of Fact and Conclusions of Law which resolved the community property issues between Joaquin and Nancy.  It then issued a Final Judgment of Divorce on January 5, 2010.  *See* DM0476-05.

5.  Joaquin passed away on November 25, 2011.

---

[3] On August 17, 2021, the Court denied Patrick's Motion to Dismiss the Court's citation. Relative to the issue of whether Elizabeth had standing to file her petition, the Court held that there were issues of fact surrounding the validity of the marriage and that the Court did not have sufficient evidence to render a ruling prior to the trial.  Thus, the Court "denie[d] the Motion pending review of the relevant evidence."  Order Denying Mot. Dismiss and Setting Sched. Conf. (Aug. 17, 2021).  These motions for summary judgment have now afforded the Court the opportunity to review evidence of undisputed material facts.

ORIGINAL

## III.    LAW AND DISCUSSION

### A.    Summary Judgment Standard

Under Guam Rule of Civil Procedure 56(c),[4] summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Summary judgment is particularly appropriate when unresolved issues are primarily legal rather than factual. *Adams ex rel. Harris v. Boy Scouts of America-Chickasaw Council*, 271 F.3d 769, 775 (8th Cir. 2001).

### B.    Patrick has standing in this case to challenge the validity of Joaquin and Elizabeth's marriage, and is not barred by the doctrine of laches.

Elizabeth first contests Patrick's standing to challenge the validity of the marriage. She claims that he cannot demonstrate an injury in fact, thereby depriving the court of subject matter jurisdiction.

However, this is not an action to invalidate a marriage but rather a probate matter to determine the decedent's rightful heirs. The Court's probate jurisdiction encompasses determining the proof of wills and letters testamentary, as well as letters of administration and the administration of estates. 15 GCA § 1403. In exercising its jurisdiction, the Court must examine questions of competency and inheritance. As an undisputed heir of Joaquin, Patrick has the right to ask the Court to determine other persons' interests in the estate. Moreover, the will contest statute gives Patrick the right as a person interested in Joaquin's will to state his position on the validity of proffered wills during a will contest. 15 GCA § 1601. For these reasons, the Court has subject matter jurisdiction over this will contest and the issues raised herein, and Patrick's participation does not eliminate such jurisdiction.

---

[4] A party may seek dismissal of a will contest under the Guam Rules of Civil Procedure. 15 GCA § 1601. Although this is not a dismissal motion, the Court will apply and utilize Rule 56's procedure to this will contest.

ORIGINAL

Nor is he barred by the doctrine of laches. Laches bars a claim when a party lacks diligence in bringing a claim and prejudice results. *Guam Election Comm'n v. Responsible Choices for All Adults Coalition*, 2007 Guam 20 ¶ 77. Elizabeth appears to argue that Patrick lacked diligence in not endeavoring to invalidate his father's marriage to Elizabeth before he passed. Opp. to Patrick's Mot. Summ. J. at 6 (Mar. 2, 2022). Patrick's object, however, is to preserve the interests in his father's estate held by himself and his siblings. Not only would he lack standing to challenge his father's marriage prior to his father's passing--as Elizabeth recognizes--but there was no challenge by persons outside of the will until Albert's petition. Once Elizabeth entered an appearance and nominated Albert to petition the Court, Patrick vigorously challenged those efforts.[5] Patrick therefore did not lack diligence in raising his concerns and is not barred by laches.

## C. Whether Elizabeth has priority or interest to file a petition to admit the 2008 will and for letters testamentary.

Under Guam law, a surviving spouse and a competent person appointed by the surviving spouse have priority over the children of the decedent. 15 GCA § 1805(a). A spouse acquired after a will is executed may also have inheritance rights regardless of the contents of a will. *See, e.g., In re Turney's Estate*, 226 P.2d 80, 82 (Cal. App. 1951) ("It has long been the policy of the law that upon marriage an antecedent will shall be revoked."). Elizabeth's intervention as Joaquin's purported spouse implicates questions over the distribution of his estate and who has the priority to serve as the executor. The Court now reviews whether Elizabeth is, in fact, a surviving spouse and whether Joaquin was free to marry before the entry of a final divorce decree.

---

[5] *See, e.g.,* Obj. to Pet. by Albert I. Tudela (Mar. 17, 2021); Mot. Support Super. Ct. Guam Interlocutory Divorce Decree and Final J. DM0473-05 (Apr. 29, 2021); Mot. Dismiss Citation (June 7, 2021); Mot. Dismiss (July 15, 2021); Mot. Reconsider Dismissal (Sep. 8, 2021); Mot. Reconsideration & Summary J. (Sep. 22, 2021); Mot. Summ. J. (Jan. 25, 2022).

ORIGINAL

## 1. Joaquin's divorce was not final prior to his marriage to Elizabeth.

The Court first examines whether Joaquin's divorce from Nancy was final prior to his marriage to Elizabeth. Based on the undisputed facts, Joaquin (1) obtained an interlocutory divorce decree in January 2008, (2) married Elizabeth in April 2008, and (3) acquired a final divorce decree in January 2010.

Elizabeth argues that the 2008 divorce decree was rendered final because of the language, "That the marriage of Plaintiff and Defendant is dissolved *nunc pro tunc* as of January 16, 2008, pending the entry of the final judgment." DM0473-05 (Interlocutory Decree Divorce). She argues that the language that the marriage was dissolved "nunc pro tunc" and "pending the entry of the final judgment" means that once the final judgment was entered, it became retroactive to the date of the interlocutory decree.

Elizabeth's interpretation, however, does not abide by Guam law. First, the issuance of an interlocutory judgment declares one's *entitlement* to a divorce.

> If [the court] determines that the dissolution of marriage ought to be granted, interlocutory judgment must be entered, declaring that the party in whose favor the court decides is entitled to a dissolution of marriage. After the entry of the interlocutory judgment, neither party shall have the right to dismiss the action without the consent of the other.

19 GCA § 8321. Then, after six months, a final judgment may be entered:

> When six (6) months have expired after filing of the initial petition or complaint for divorce, and following entry of an interlocutory decree of divorce, the court on motion of either party, or upon its own motion, may enter the final judgment granting the dissolution of marriage, which final judgment shall restore the parties to status as single persons.

19 GCA § 8322. The final judgment is what officially dissolves the marriage. *See* 19 GCA § 8201(b).

When the court executed the interlocutory decree, it could not make the final judgment retroactive. Indeed, it could not be finalized for six months, at the least. Also, based on the



ORIGINAL

above statutory provisions, the final judgment is separate and apart from the interlocutory decree and was not to be incorporated into it.

Even further, however, this Court does not interpret the final divorce decree to be retroactive to the date of the interlocutory decree. When plainly read, the "nunc pro tunc" language, which is commonly known to make an order retroactive to a certain date, references the date of the hearing on the interlocutory decree rather than making the final judgment retroactive. The hearing on the interlocutory decree occurred on January 16, 2008, and the Interlocutory Decree was filed three weeks later. Because the Court ordered the dissolution of the marriage "nunc pro tunc as of January 16, 2008," all that was made retroactive was the effective date of the February 7, 2008 Interlocutory Decree to the date of the hearing. The "nunc pro tunc" language had no relevance to the effective date of the final judgment.

In conclusion, Joaquin's divorce from Nancy was not final when he married Elizabeth in 2009.

## 2. Joaquin and Elizabeth's marriage can be recognized under 19 GCA § 3107 only if not in conflict with other provisions.

The Court next turns to Elizabeth's argument that 19 GCA § 3107 validates her foreign marriage to Joaquin. That provision states: "All marriages contracted outside the Territory of Guam, which would be valid by the laws of the country in which the same were contracted, are valid in the territory of Guam." 19 GCA § 3107. She also argues that her marriage is entitled to a (disputable) presumption of validity under 6 GCA § 5107 which states that "a man and woman deporting themselves as husband and wife" are presumed to have been entered into a lawful contract of marriage.

However, within the same chapter as section 3107 is a second, relevant statute. Section 3105 of Title 19 states that a



ORIGINAL

subsequent marriage by any person during the life of a former husband or wife of such person, with any other person other than such former husband or wife is illegal and void from the beginning, unless . . . the former marriage has been annulled or dissolved. In no case can a marriage of either the parties during the life of the other, be valid in Guam, if contracted within one (1) year after the entry of an interlocutory decree in a proceeding for divorce.

19 GCA § 3105(a). Section 3107 recognizes Elizabeth and Joaquin's marriage in Guam. In contrast, under section 3105, Joaquin and Elizabeth's marriage would be illegal, void, and not valid in Guam "from the beginning" because one year had not elapsed from the date of his interlocutory divorce decree and because his marriage to Nancy had not yet been dissolved. As applied to the current case, these statutes conflict. In such situations, the statutes must be read together and harmonized, if possible. *Pac. Rock Corp. v. Dep't of Educ.*, 2000 Guam 19 ¶ 25; *Benavente v. Taitano*, 2006 Guam 16 ¶ 18. "Where as here two codes are to be construed, they 'must be regarded as blending into each other and forming a single statute.' Accordingly, they 'must be read together and so construed as to give effect, when possible, to all the provisions thereof.'" *Mejia v. Reed*, 74 P.3d 166, 170 (Cal. 2003).

One way to harmonize the language of both statutes is to recognize that a foreign marriage is valid under section 3107 as long as it still falls within the parameters of section 3105. In other words, a marriage initiated outside Guam can be recognized as valid in Guam if valid in the foreign jurisdiction, and also does not occur within the one year of the entry of an interlocutory decree. This construction is also reasonable because section 3105 references valid marriages "in Guam," that is, marriages considered valid in this jurisdiction.

In support of this interpretation, some guidance is offered in *Jones v. Jones*, 5 Cal. Rptr. 803 (Ct. App. 1960). In that case, the plaintiff divorced in Oregon and, within weeks, married the defendant in California. The defendant argued that the plaintiff's Oregon divorce was not final when she remarried, and thus the parties' California marriage was void. The California appellate court examined and construed the Oregon divorce statute, which prohibited remarriage


ORIGINAL

within six months of a divorce decree. It first made clear that the "effect of a decree of divorce is determined by the laws of the state in which it is obtained." *Id*. at 803. It then applied Oregon caselaw, which held that her second marriage was void because the plaintiff failed to wait out the six months before remarrying. *Id*. at 808.

That is the case here. Under Guam law, as of April 2008, Joaquin was still considered married to Nancy and was still within the one-year timeframe in which he could not have entered into a valid marriage. This Court is bound to enforce Guam law on this issue, meaning that Joaquin's marriage within three months of his interlocutory divorce cannot be recognized as valid.

### 3. Elizabeth's cited caselaw is not applicable.

Elizabeth cites various cases from California and other jurisdictions to support her general proposition that this Court must recognize her foreign marriage. The Court reviews each of her propositions in turn.

First, Elizabeth asks the Court to adhere to certain California precedents recognizing the validity of foreign marriages. Although Guam adopted California statutes regarding divorce, *see Pet. of Lujan*, 144 F. Supp. 150, 151 (D. Guam 1956), Elizabeth cites two cases that analyze a *precursor statute* to California's version of the interlocutory divorce procedure that Guam eventually adopted. Those cases are *Estate of Wood*, 69 P. 900 (Cal. 1902) and *Mohn v. Tingley*, 217 P. 733 (Cal. 1923).

*Grannis v. Super. Ct. of City and Cty. of San Francisco*, 79 P. 891, 893 (Cal. 1905) (en banc) explains why *Wood* and *Mohni* do not apply. *Grannis* advises that in the late 1890s, California's divorce statute stated that a marriage contracted by a divorced person during the life of the former spouse and within one year after the time of the judgment of divorce, should be illegal and void. However, "Immediately it was contended that this law was of no effect beyond

ORIGINAL

the confines of the state, and that marriages solemnized during the year after the divorce, within another state or territory, which were valid by the laws of such state or territory, must be recognized as valid in this state." *Id. Grannis* then recognizes that *Wood* settled this question in determining that extraterritorial marriages retained validity even if occurring within that one year after a final divorce. 79. P. at 893.

Because *Wood* approved of California citizens evading the ban on remarriage within one year of a final divorce decree, the California legislature amended the law and instituted the interlocutory divorce procedure (that Guam eventually adopted). 79. P. at 893. The interlocutory divorce procedure "provid[ed] for a delay in the entry of final judgment dissolving the marriage for at least one year after the trial and interlocutory judgment in the action." *Id.* at 894. *Grannis* recognized that this procedure "presents the same obstacle to speedy divorces, the same opportunity for reflection and reconciliation, and the same check to collusion and fraud, and in the meantime, it effectually prevents a subsequent marriage with another person by the simple provision that the former marriage, during the interval, shall remain undissolved." *Id.*

Because Guam has enacted California's interlocutory divorce process, the analyses in *Wood* and *Mohn* are no longer pertinent. Both of those cases examine California divorce law existing before the enactment of the interlocutory divorce procedure.[6] The former law was construed to favor extra-territorial marriages even if committed within a year after a final divorce. However, those cases are irrelevant because the law changed, and Guam uses the changed version. Under the changed statute, the policy against remarriage was confined to the period within the interlocutory divorce period and prior to a final marriage.

Second, Elizabeth cites other jurisdictions for the proposition that one state cannot prohibit a marriage valid in another jurisdiction. As a first point, the Court is not "prohibiting"

---

[6] Issued in 1923, *Mohn* acknowledges that it analyzed the former version of the statute which did not contain the interlocutory divorce procedure. 217 P. at 736.

ORIGINAL

Joaquin and Elizabeth's marriage; instead, it analyzes whether Joaquin's non-final divorce deprives Elizabeth of inheritance rights or priority under probate law. But also, when carefully read, those cases do not help Elizabeth.

For example, she asks the Court to review *In re Winder's Estate*, 212 P.2d 18 (Cal. App. 1950), for its application of Colorado law. *Winder* relies on *Griswold v. Griswold*, 129 P. 560, 562 (Colo. App. 1913), which recognized extra-territorial marriages occurring within a year after a divorce despite a Colorado statute that prohibited remarriage within a year of divorce. However, *Griswold* discusses an important distinction: unlike in other jurisdictions (such as Guam), the Colorado statute did not state that marriages occurring within the one-year period were void. *Id.* at 565.

This is the same situation in *Criss v. Industrial Comm'n*, 180 N.E. 572 (Ill. 1932), another case cited by Elizabeth. *Criss* examined whether a marriage in Illinois within sixty days of a divorce in Alabama could be considered valid. While the Illinois court decided the marriage was not void, like *Griswold*, it acknowledged that the jurisdiction where the divorce occurred did not expressly declare marriages void if done within the prohibited timeframe following a divorce. *Criss*, 180 N.W. at 574.

Unlike Colorado and Alabama, Guam's statute explicitly does consider such marriages occurring within a certain timeframe after a divorce--in this case, an interlocutory divorce--void and illegal. *See* 19 GCA § 3105. Elizabeth's citations to these jurisdictions therefore have no applicability.

Third, Elizabeth cites at length *Spellens v. Spellens*, 317 P.2d 613 (Cal. 1957), which recognized a marriage occurring between the parties in Mexico before the plaintiff's California interlocutory divorce period expired. That case also had a unique circumstance: the California court found justification to apply estoppel to the defendant's arguments that their marriage was

ORIGINAL

invalid. The court cited that the defendant convinced her to marry him while she was still married to another; assisted in negotiating the terms of her divorce and gave her advice to waive her community property rights and alimony on assurances that he would care for her; and represented to her that their marriage in Mexico would be valid. *Id.* at 214. The California court found these reasons estopped the husband from questioning the validity of their foreign marriage. *Id.* at 619.

The core issue in *Spellens* is whether a party to a marriage can contest its validity or is otherwise estopped from doing so. The California court made that clear in limiting its holding: "It may be noted also that we are not recognizing a common law marriage which does not exist in this state for the theory is that the marriage is not validated; it is merely that the defendant cannot contest it." *Id.* Elizabeth has not argued for estoppel against Patrick, making the holding in *Spellens* inapplicable to this case. To the extent her arguments concern Patrick's standing, the Court has already addressed his standing. As a final note, Elizabeth fails to show that estoppel applies because someone tricked or defrauded her into marrying Joaquin.

Overall, the Court is not convinced that any of Elizabeth's primary caselaw applies here.

### 4. Elizabeth's rights, if any, and further proceedings.

Having determined that Joaquin's prior marriage was not dissolved and that Guam law does not otherwise permit the recognition of Elizabeth's marriage, the Court determines that Elizabeth does not have priority to select an administrator under the probate law. As Elizabeth is disqualified, her petition to appoint her nominee, Albert, has lesser priority than Franklin's petition. While she may not have priority, Elizabeth has provided the Court with a subsequent will which Patrick accepts, and Franklin and other family members may accept. *See* Mot. Summ. J. at 10. It appears an evidentiary hearing is still necessary to determine: (1) which Will if any, should be admitted; (2) if Franklin insists on admitting the 2003 Will, whether it complies

ORIGINAL

with Guam law; (3) whether Franklin is competent to serve as the administrator of his father's estate.[7] The parties may present evidence on this point.

Furthermore, at oral argument, the Court raised what inheritance rights may be available to Elizabeth as a potential putative spouse. In the interest of conservation of judicial resources, the Court will allow Elizabeth to furnish proof at trial of her status as a putative spouse entitled to receive a part of Joaquin's estate. Following the trial, the Court will allow the parties to brief this issue.

## IV.     CONCLUSION AND ORDER

Because Joaquin was not free to marry Elizabeth in 2008, Elizabeth is not recognized as his legal spouse and has no right to appoint an administrator over Joaquin's estate. This case will proceed to a will contest trial in which the Court will hear evidence on the validity of the two purported wills, Franklin's competency to serve as an administrator, and the facts concerning whether Elizabeth qualifies as a putative spouse.

SO ORDERED this 1st day of August 2022.

HON. ELYZE M. IRIARTE
**Judge, Superior Court of Guam**

Appearing Parties:
Joshua D. Walsh, Esq., Razzano Walsh & Torres, P.C., for Petitioner Franklin P. Leon Guerrero
Jon A. Visosky, Esq., Roberts Fowler & Visosky, LLP, for Elizabeth Raposa Leon Guerrero
Patrick D. Leon Guerrero, self-represented
Joaquin Leon-Guerrero, self-represented

---

[7] Another legal issue that may need resolution is how to distribute the estate under the 2008 will, which states that Joaquin is divorced. Per this Court's ruling, he was legally still married to Nancy.

ORIGINAL